UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of TELEGRAPH MEDIA GROUP
LIMITED for an Order Pursuant to 28 U.S.C. § 1782
to Conduct Discovery for Use in a Foreign
Proceeding

23-MC-215 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Zia Chishti ("Chishti") moves to intervene in this action, file his motion papers under seal and quash the subpoena issued by Petitioner Telegraph Media Group Limited ("Petitioner" or "Telegraph") to Respondent Michael Zweig ("Respondent" or "Zweig"). For the reasons stated herein, the motion to intervene is GRANTED and the motion to seal and motion to quash are DENIED. The Court also modifies the scope of discovery and enters a protective order.

## BACKGROUND

On June 29, 2023, Petitioner brought an *ex parte* application pursuant to 28 U.S.C. § 1782 ("Section 1782") seeking an order authorizing discovery from Respondent by means of a subpoena served pursuant to Rule 45 of the Federal Rules of Civil Procedure. *See* ECF No. 3 ("Pet. Mem."). The Section 1782 application arises from a defamation action filed publicly in England by Chishti against Telegraph, the publisher of The Daily Telegraph and The Sunday Telegraph in London. *See Muhammad Ziaullah Khan Chishti v. Telegraph Media Group Ltd.*, Claim No. KB-2022-004316 (the "U.K. Action"); Pet. Mem. at 1; ECF No. 22 at 2.

On November 16, 2021, Tatiana Spottiswoode ("Spottiswoode") publicly testified before the United States House of Representatives Judiciary Committee (the "Judiciary Committee") at a hearing titled "Silenced: How Forced Arbitration Keeps Victims of Sexual Harassment in the

Shadows." ECF No. 5 ("Bolger Decl.") Ex. 3. The Judiciary Committee subpoenaed Spottiswoode to testify. *Id*. at 3.

In the U.K. Action, Chishti seeks to hold Telegraph liable for allegedly false statements in two articles Telegraph published regarding Spottiswoode's testimony before the Judiciary Committee. Pet. Mem. at 6–9. The articles purport to describe Spottiswoode's testimony that, *inter alia*, Chishti sexually assaulted her while she was working for his company, Afiniti Limited ("Afiniti"), then enforced an arbitration agreement in her employment contract to adjudicate in confidential arbitration (the "Arbitration") her claims of gender discrimination, sexual harassment and hostile work environment against him and Afiniti. *Id*. at 1–2. Shortly after Spottiswoode's congressional testimony, the U.S. House of Representatives published on its public website the award from the Arbitration, in which the arbitrator found in favor of Spottiswoode and awarded her over $4 million. Bolger Decl. Ex. 2 (the "Arbitration Award"); ECF No. 22 at 2. Chishti vigorously denies the Arbitration Award's characterization of his relationship with Spottiswoode. *See* ECF 13-2 at 4.

In this action, Telegraph seeks materials from the Arbitration from Zweig, Spottiswoode's arbitration attorney. Pet. Mem. at 1–2. Telegraph intends to use the discovery to support its defenses to defamation in the U.K. Action, including that (1) the statements it printed were substantially true and (2) Chishti is attempting to improperly relitigate or collaterally attack issues already decided in the Arbitration. Pet. Mem. at 9, 11–12, 15.

Zweig and Spottiswoode are among the defendants in an ongoing suit in the United States District Court for the District of Columbia (the "D.C. Action"), where Chishti is litigating claims related to, *inter alia*, alleged violations of the Arbitration's protective order. *See Chishti v. Spottiswoode*, No. 22-CV-3490 (ABJ) (D.D.C. 2022); Bolger Decl. Ex. 12. The protective order

provided that "[a]ll materials produced or generated in this Arbitration are confidential" and that such materials "shall not be used by any Party to this Arbitration except for purposes of this Arbitration . . . ." Bolger Decl. Ex. 13 ("Arbitration Protective Order") ¶¶ 2, 4. The Arbitration Protective Order permits that "[n]othing in this Protective Order will prevent any Party from producing any Confidential Material in its possession in response to a lawful subpoena or other compulsory process . . . ." *Id.* ¶ 8. In the D.C. Action, Chishti sought to file his complaint under seal on the basis that the Arbitration Protective Order required such sealing. *See* Memorandum Opinion and Order, *Chishti v. Spottiswoode*, No. 22-CV-3490 (ABJ) (D.D.C. Nov. 16, 2022), ECF No. 3 ("D.C. Sealing Opinion"). The D.C. Court denied Chishti's sealing motion in all respects, except as to select photographs of Spottiswoode, due to their sensitive nature. *Id* at 8.

Telegraph states that it brought this action because it could not obtain materials from the Arbitration from Chishti. ECF No. 22 at 2–3; ECF No. 23 at 1. Chishti counters that he offered to disclose to Telegraph "the entirety of his communication history with Spottiswoode in his possession," but that Telegraph refused. ECF No. 37 at 2. The record of correspondence Chishti attached to his reply brief indicates that the parties disagreed as to whether Chishti's proposed disclosure was sufficiently comprehensive. ECF 37-1 at 21–22.

On July 6, 2023, the Court granted Telegraph's Section 1782 application, concluding that the statutory requirements were met and the discretionary factors favored a grant. ECF No. 9. Thus, the Court authorized Telegraph's counsel to serve on Zweig a subpoena that sought "[a]ll submissions to the arbitrator, deposition or hearing transcripts, exhibits, expert reports, legal memoranda, or correspondence in [Zweig's] possession from or concerning the arbitration, *Spottiswoode v. Chishti*." *Id.*; Bolger Decl. Ex 1 at 4. Telegraph has since indicated its willingness to narrow the scope of its subpoena to "(1) [t]he transcripts of the arbitration hearing,

3

including the exhibits introduced at the hearing; (2) [t]he deposition transcripts for Chishti and

Spottiswoode, including any exhibits introduced during the depositions; and (3) [t]he pre-hearing

and post-hearing briefing submitted by the parties to the arbitration, including any attached

declarations." ECF No. 23 at 4.

The Court granted Telegraph's Section 1782 application "without prejudice to the timely

filing of a motion to quash the subpoena and, in the event such a motion is filed, subject to

reconsideration . . . ." ECF No. 9 at 1. On July 27, 2023, Chishti filed the instant motions to

intervene, seal his motion papers and quash the subpoena. ECF No. 13. Telegraph and Zweig do

not oppose the motion to intervene, but both oppose the motion to seal and the motion to quash.

*See* ECF Nos. 22, 23, 25, 26.[1]

## LEGAL STANDARD

The Court sets forth the standards for the motion to intervene and motion to seal, and the

Section 1782 framework that governs the motion to quash.

## I.      Motion to Intervene

Fed. R. Civ. P. 24(a) *requires* a court to allow intervention of a party that "claims an

interest relating to the property or transaction that is the subject of the action, and is so situated

that disposing of the action may as a practical matter impair or impede the movant's ability to

protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P.

24(b) *permits* a court to allow intervention of a party that "has a claim or defense that shares with

the main action a common question of law or fact," so long as intervention will not "unduly

---

[1]      Nominally, Zweig filed a response, rather than an opposition, to the motion to quash.
However, the contents of Zweig's memorandum indicate that he opposes, at least in part,
Chishti's motion. *See* ECF No. 25.

delay or prejudice the adjudication of the original parties' rights." To establish intervention as of right pursuant to Rule 24(a), the movant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (internal citation omitted). In exercising its broad discretion to determine whether an applicant is entitled to permissive intervention under Rule 24(b), a district court considers the same factors, as well as whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003); *MASTR Adjustable Rate Mortgs. Trust 2006–OA3 v. UBS Real Estate Sec., Inc.*, No. 12-CV-7322 (HB), 2013 WL 139636, at *2 (S.D.N.Y. Jan. 11, 2013). In evaluating whether the requirements for intervention are met, courts "accept as true the non-conclusory allegations of the motion." *Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (internal citation omitted).

## II.  Motion to Seal

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)) ("*Amodeo II*"). "[M]otions to seal documents must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a

document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches. *Lugosch*, 435 F.3d at 119–20 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Id*. at 119. Second, if the documents are judicial documents, a court must determine the weight of the presumption of access. *Id*. Third, a court must balance "competing considerations" against the weight of the presumption of access. *Id.* at 120.

Established "competing considerations" include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure" and of third parties. *Id.*; *see also Amodeo II*, 71 F.3d at 1050–51. In addition, "[f]inancial records of a wholly-owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Amodeo II*, 71 F.3d at 1051. Courts should also consider the "nature and degree of injury" that may result from disclosure, the "reliability of the information" and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Id*. "If such factors outweigh the value to the public of accessing the document at issue, then that document should be sealed." *Matter of Upper Brook Cos.*, No. 22-MC-97 (PKC), 2023 WL 172003, at *1 (S.D.N.Y. Jan. 12, 2023).

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. *Lugosch*, 435 F.3d at 120. Under the First Amendment "experience and logic" test, the court must consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant

positive role in the functioning of the particular process in question." *Id*. (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). If a First Amendment right of access applies, documents may only be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

## III.   28 U.S.C. § 1782

The Court sets forth the statutory factors and *Intel* factors that govern the Court's consideration of the motion to quash.

### A.   Statutory Factors

A district court may, "upon the application of any interested person," order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a). The applicant must satisfy three statutory factors by establishing that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (internal citation omitted).

### B.   *Intel* Factors

If an applicant satisfies the statutory factors, the district court "is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 78 (2d Cir. 1997)). Although the district court's discretion is broad, it must be exercised "in light of the twin aims of the statute" of "providing efficient means of assistance to participants in international litigation in our federal

courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft*, 121 F.3d at 79 (internal citation and quotation marks omitted). In particular, the district court should consider the four discretionary "*Intel* factors" articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which event the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *In re del Valle Ruiz*, 939 F.3d 520, 533–34 (2d Cir. 2019) (quoting *Intel*, 542 U.S. at 264-65) (internal quotation marks omitted).

## DISCUSSION

The Court first considers whether Chishti should be allowed to intervene. After determining that intervention is proper, the Court finds that Chishti's motion papers should be unsealed. Turning to the Section 1782 merits, the Court concludes that the statutory and *Intel* factors weigh in favor of Telegraph. Lastly, to address any concerns regarding overbreadth or improper use, the Court tailors the scope of the subpoena and enters a protective order.

## I.    The Motion to Intervene is Granted

Chishti seeks to intervene in the instant action in order to oppose the Section 1782 subpoena. ECF 13-2 at 10–11. "[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness." *In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997).

8

"[P]arties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties." *Id.*; *see also In re Hornbeam Corp.*, No. 14-MC-424, 2015 WL 13647606, at *2–3 (S.D.N.Y. Sept. 17, 2015) (concluding that the party against whom the requested discovery would be used had standing to challenge the issuance of Section 1782 subpoenas and satisfied the requirements for permissive intervention under Rule 24); *In re Devine*, No. 22-MC-133 (VSB), 2022 WL 1658586, at *3 (S.D.N.Y. May 25, 2022) (same).

Telegraph intends to use the requested discovery in the U.K. Action against Chishti. Pet. Mem. at 9, 11–12. This weighs in favor of Chishti's right to intervene. *See In re JSC BTA Bank*, 577 F. Supp. 3d 262, 265 (S.D.N.Y. 2021). As the party "against whom the requested information will be used," Chishti has standing to challenge the issuance of the Section 1782 subpoena under the statute itself. *Sarrio*, 119 F.3d at 148.

Moreover, the discretionary factors favor permitting Chishti to intervene. Chishti timely filed his motion to quash on July 27, 2023, in accordance with the briefing schedule set by the Court in its July 6, 2023 order. *See* ECF Nos. 9, 13. Chishti states an interest in the materials sought by the subpoena, which stem from the Arbitration to which he was party, and in which he asserts a confidentiality interest. *Hornbeam*, 2015 WL 13647606, at *3 (finding that "permissive intervention is an appropriate means" for nonparty in Section 1782 action to "vindicate any confidentiality interests he might have"). Chishti's interests may be impaired by the disposition of this action, given that he is the party "against whom the requested information will be used." *Sarrio*, 119 F.3d at 148; *see also In re Klein*, No. 20-MC-203 (PKC), 2022 WL 1567584, at *3 (S.D.N.Y. May 18, 2022). Moreover, Respondent does not oppose the Section 1782 subpoena. *See* ECF No. 25. Chishti has shown that his interest is not protected adequately by the parties to

the action. Finally, neither Telegraph nor Zweig object to Chishti's motion to intervene, and the

proposed intervention will not unduly delay or prejudice adjudication of the parties' rights. Thus,

the Court allows Chishti to intervene pursuant to Rule 24(b) for the purpose of opposing the

Section 1782 subpoena. Because the Court grants Chishti's motion for permissive intervention,

"it need not reach the question of intervention as of right." *In re Reyes*, No. 19-CV-7219 (AT),

2019 WL 6170901, at *2 n.1 (S.D.N.Y. Nov. 20, 2019).

## II.     The Motion to Seal is Denied

Chishti seeks leave to place his motion papers under seal, including his motion to

intervene, motion to quash and supporting and reply memoranda of law. *See* ECF Nos. 13-1, 35,

38.[2] The Court applies the three-part test for determining whether the common law right of

public access attaches. *See Lugosch*, 435 F.3d at 119–20. The Court denies Chishti's sealing

request and requires that his moving papers appear publicly on the docket in fully unredacted

form.

### A.  Chishti's Motion Papers are Judicial Documents

Chishti states that his motion papers are judicial documents subject to the presumption of

public access. ECF No. 13-1 at 3; ECF No. 35 at 3; ECF No. 38 at 3. The Court agrees. The

filings Chishti seeks to place under seal are "unquestionably judicial documents" to which the

presumption of public access attaches. *Lugosch*, 435 F.3d at 123.

### B.  Substantial Presumption of Access Attaches to Chishti's Motion Papers

The weight accorded the presumption of public access is "governed by the role of the

material at issue in the exercise of Article III judicial power and the resultant value of such

---

[2]      Chishti's three sealing motions are identical.

information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049. This material generally "fall[s] somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id*. Documents submitted in connection with dispositive motions, such as motions for summary judgment, are entitled to a strong presumption of access. *Lugosch*, 435 F.3d at 121. Judicial documents that "play only a negligible role in the performance of Article III duties" carry a low presumption. *Amodeo II*, 71 F.3d at 1050. Those that "play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than . . . a motion filed by a party seeking action by a court, or . . . any other document which is presented to the court to invoke its powers or affect its decisions." *Id*. (internal citations and quotation marks omitted).

The fact that a document is restricted by a protective order "has no bearing on the presumption of access that attaches when it becomes a judicial document." *Collado v. City of New York*, 193 F. Supp. 3d 286, 289–90 (S.D.N.Y. 2016). Similarly, the fact that a document contains descriptions or excerpts of documents restricted by a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document. *See Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, No. 17-CV-124 (LLS), 2023 WL 3919217, at *1 (S.D.N.Y. Mar. 7, 2023); *Simmons v. Ferrigno*, No. 17-CV-6176 (FPG), 2023 WL 3713513, at *3 (W.D.N.Y. May 30, 2023). Chishti's arguments pursuant to the Arbitration Protective Order are thus not relevant to the second prong of the *Lugosch* test. The presumption of public access "is not diminished just because certain information has been subject to a protective order entered into by the parties privately in an arbitration." D.C. Sealing Opinion at 5.

Chishti's motion papers are entitled to a "substantial" presumption of access which falls a notch below a "strong" presumption on the continuum. *See Upper Brook Cos.*, 2023 WL 172003, at *5. "[S]ection 1782 applications are generally considered non-dispositive," which weighs against a strong presumption of access. *Id.* (collecting cases). However, the filings at issue here are "critical to the Court's ability to rule on the [Section 1782] application and motion to vacate," which weighs in favor of a greater presumption of access. *Id*. The Court's disposition of the motion to quash will effectively determine the outcome of this action. Access to Chishti's motion papers is critical to the public's ability to understand that disposition. Moreover, "the public interest in this dispute is heightened here because of the media attention the parties have garnered, with both Chishti and Spottiswoode making public statements." D.C. Sealing Opinion at 5. Accordingly, the Court finds that a substantial presumption of access attaches to the judicial documents at issue.

### C.  Competing Considerations Do Not Outweigh the Presumption of Access

"The party opposing disclosure [of a judicial document] must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id*. Against a substantial presumption of access, Chishti does not identify significant countervailing interests. Chishti submits that his privacy interests and confidentiality obligations outweigh the presumption of public access. ECF No. 13-1 at 3–4. The Court is not persuaded. Chishti asserts that he is entitled to file his motion papers under seal because "[t]he subpoena seeks information that includes the most intimate details of a private, romantic relationship." *Id.* at 3. Whether the *subpoena* seeks information of a sensitive or confidential

nature has no bearing on whether a *movant's filings* seeking to quash it meet the standard for sealing.

Chishti argues that the Arbitration Protective Order justifies sealing his motion papers. ECF 13-1 at 4. "[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order . . . that same material might not overcome the presumption of public access once it becomes a judicial document." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015). Chishti's "broad citations to the Protective Order do not satisfy *Lugosch* and are, in any event, insufficient to overcome the presumption of access as the 'mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure is reasonable.'" *Tromblee v. New York*, No. 19-CV-638 (BKS), 2022 WL 17266979, at *4 (N.D.N.Y. Nov. 29, 2022) (quoting *Lugosch*, 435 F.3d at 126).

Furthermore, the Court understands that the "intimate details" contained in Chishti's filings have already been disclosed to the public, including by means of the Arbitration Award published on the website of the U.S. House of Representatives and Chishti's public filings in the D.C. Action and U.K. Action. Moreover, Chishti does not appear to include excerpts from the Arbitration in his motion papers other than provisions of the Arbitration Protective Order itself, which he already publicly filed in its entirety in the D.C. Action. *See* Bolger Decl. Ex. 13. The repeated prior public disclosure of the information that Chishti seeks to seal here is fatal to his sealing motion. *See Campbell v. City of New York*, No. 16-CV-8719 (AJN), 2021 WL 826899, at *10 (S.D.N.Y. Mar. 4, 2021), *abrogated on other grounds by Perry v. City of New York*, No. 21-2095, 2023 WL 5490572 (2d Cir. Aug. 25, 2023) (collecting cases). Chishti has not met his burden to demonstrate that countervailing factors outweigh the presumption of public access.

Accordingly, the Court denies his motion to seal. Because the common law framework is dispositive of the motion to seal, the Court need not undertake the First Amendment analysis.

## III.     The Motion to Quash is Denied

In its July 6, 2023 order, the Court granted Telegraph's Section 1782 application, concluding that the application met the statutory requirements and the *Intel* factors favored granting the application. ECF No. 9. Because the statutory factors are uncontested, the Court focuses its analysis on the *Intel* factors.

### A.  The Statutory Factors are Uncontested

Chishti does not contest the statutory factors so there is no reason for the Court to reconsider its prior determination that they are satisfied.

### B.  The *Intel* Factors Weigh in Favor of Telegraph

The motion to quash hinges on the application of the *Intel* factors. The Second Circuit has instructed that "[t]he *Intel* factors are not to be applied mechanically" and that the Court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). The Court considers Chishti's arguments opposing the subpoena in relation to each *Intel* factor.

#### 1.   The Person from Whom Discovery is Sought (*Intel* Factor 1)

The first *Intel* factor instructs consideration of whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. This factor considers not only whether the respondent is literally a party to the foreign proceeding, but also whether the information sought is within the jurisdictional reach of the foreign court, and whether applicants "for all intents and

purposes . . . seek[ ] discovery from . . . their opponent in the [foreign] litigation." *Schmitz*, 376 F.3d at 85 (citing *Intel*, 542 U.S. at 264).

Zweig, the target of the subpoena, is not a participant in the U.K. Action. The Court understands that Spottiswoode, for whom Zweig served as arbitration counsel, has been or will be removed as a defendant in the U.K. Action, or is otherwise no longer a participant therein. Pet. Mem. at 7. Nonetheless, Chishti argues – without citing any law – that Zweig should be considered a participant in U.K. Action due to "the likelihood of collaboration between the Telegraph and Zweig" and because Zweig is a defendant in the D.C. Action. ECF No. 13-2 at 14; ECF No. 37 at 3. These arguments lack merit. The first *Intel* factor is rooted in considerations of "the foreign tribunal's jurisdictional reach." *Intel*, 542 U.S. at 264. The fact that Chishti filed a lawsuit against Zweig in the United States does not render Zweig an actual or constructive participant in the U.K. Action or place him or the materials in his possession within the jurisdictional reach of the English Court.

Chishti repeatedly speculates that Telegraph and Zweig are in cahoots. *See, e.g.*, ECF No. 37 at 3–4; ECF No. 40 at 5. Chishti presents no evidence of conspiracy between Telegraph and Zweig, but nonetheless avers that they are they are likely acting in concert to undermine the Arbitration Protective Order. ECF 37 at 3–4. Chishti's bare allegations do not influence the Court's analysis of the first *Intel* factor. The alleged relationship is too attenuated to justify treating Zweig as standing in the shoes of Telegraph. *See In re Polygon Glob. Partners LLP*, No. 21-MC-364 (ER), 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) (finding that separate legal persons or entities, including those with a parent-subsidiary corporate relationship, are not merged when assessing who is a "**participant**" under the first *Intel* factor).

The Second Circuit instructs that "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company." *Kiobel*, 895 F.3d at 245. Although this case, like *Kiobel*, involves seeking documents from U.S. counsel, the pertinent similarities end there. Chishti is not the "real party from whom documents are sought." And while Zweig has custody over the relevant materials due to his prior representation of Spottiswoode in U.S. arbitration, Zweig is not being compelled to turn over documents to Spottiswoode's adversary. As such, this case does not implicate *Kiobel*'s concerns with jeopardizing open attorney-client communications where counsel is forced to turn over documents, in its possession solely due to U.S. litigation, to an adversary from that litigation seeking to use them offensively against the client abroad. *Id*. at 241. Thus, the "real party" rule of *Kiobel* does not affect the Court's consideration of the first *Intel* factor.

Chishti argues that Telegraph's Section 1782 application is premature because the discovery it seeks may be available at a later stage in the U.K. Action, raising this argument for the first time in his reply briefing. ECF No. 37 at 1–2, 5–8. Thus, the Court need not consider it. *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007) ("[W]e decline to consider an argument raised for the first time in a reply brief."); *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply.").

Nonetheless, assuming *arguendo* that Telegraph could obtain the relevant materials in the U.K. Action, "this would not bar discovery of the materials sought through this proceeding." *Polygon*, 2021 WL 2117397, at *8, 10. The Second Circuit has repeatedly made clear there is no "exhaustion" requirement under Section 1782. *See, e.g., Mees*, 793 F.3d at 303; *In re*

*Metallgesellschaft*, 121 F.3d at 79. The Court further discusses this point in relation to the third *Intel* factor. *See infra* section III(B)(3). The first *Intel* factor weighs in favor of Telegraph.

### 2.   The Receptivity of the Foreign Government (*Intel* Factor 2)

The second *Intel* factor instructs consideration of "the receptivity of the foreign government" to "U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Chishti does not contest this factor and admits that "[t]he United Kingdom and the United States have a long history of respecting each other's courts and procedures." ECF 13-2 at 15. Chishti's reply brief backpedals to declare the second *Intel* factor "at best irrelevant." ECF 37 at 5. To the extent this represents Chishti's attempt to recant his prior admission, the Court declines to consider an argument raised for the first time in reply. *See Verzekeringen*, 485 F.3d at 100 n.16; *Yousef*, 327 F.3d 56 at 115. Moreover, there is ample evidence that "courts in the United Kingdom . . . are [] receptive to Section 1782 discovery*." In re Batbold*, No. 21-MC-218 (RA) (OTW), 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021); *see also* Pet. Mem. at 13–14. The second *Intel* factor weighs in favor of Telegraph.

### 3.   Circumvention of Discovery Restrictions (*Intel* Factor 3)

The third *Intel* factor instructs consideration of whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In reviewing this factor, "there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a *mechanism* for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents." *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (summary order; emphasis in original). In the latter category, a Section 1782 petitioner

"attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign

country." *Intel*, 542 U.S. at 265. In the former category, "[t]hat a country does not enable broad

discovery within a litigation does not mean that it has a policy that restricts parties from

obtaining evidence through other lawful means." *Mees*, 793 F.3d at 303 n.20. Courts have

"routinely rejected Section 1782 motions under Factor Three when applicants have already

exhausted available remedies in foreign tribunals and seek another 'bite at the apple' after having

already been denied recourse." *See In re Top Matrix Holdings Ltd.*, No. 18-MC-465 (ER), 2020

WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020).

### i. U.K. Discovery Restrictions

Telegraph seeks to obtain materials from the Arbitration to assist its defense in the U.K.

Action. Specifically, Telegraph intends to use the discovery to support defenses to defamation,

including that (1) the statements it printed were substantially true and (2) Chishti is attempting to

improperly relitigate or collaterally attack issues already decided in the Arbitration. Pet. Mem. at

9, 11–12, 15. The United Kingdom does not appear to bar such evidence, and Chishti has

presented no indication that any such rule or policy exists. *See* Pet. Mem. at 15; ECF No. 4 at 4–

5.

Instead, Chishti argues for the first time in reply that Telegraph runs afoul of the third

*Intel* factor because the U.K. Action has not yet advanced to the discovery stage.[3] Thus, this

Section 1782 application is premature. ECF No. 37 at 1–2, 5–8. The Court understands that the

U.K. Action is in its early stages. *See* Judgment of the Honourable Mrs. Justice Collins Rice of

the High Court of Justice, King's Bench Division, dated July 17, 2023 (the "July 17 Decision"),

---

[3]      The Court need not consider this argument. *See Verzekeringen*, 485 F.3d at 100 n.16;
*Yousef*, 327 F.3d 56 at 115.

*Muhammad Ziaullah Khan Chishti v. Telegraph Media Group Ltd.*, Claim No. KB-2022-004316.
The English Court has made a preliminary determination of the ordinary meaning of the two
articles in question and found that such meaning "substantially affects in an adverse manner the
attitude of other people" towards Chishti. *Id*. at ¶¶ 12, 38. There is no indication from the July 17
Decision that Section 1782 assistance would be rejected or otherwise forbidden.

Telegraph directs the Court to a decision of the English Civil Court of Appeal in *Soriano
v. Forensic News LLC* (Case No. CA-2023-000292). Pet. Mem. at 14. The *Soriano* court
indicated it was amenable to good-faith Section 1782 discovery in libel actions and found no
reason to second-guess the Southern District of New York's application of the *Intel* factors.
Bolger Decl. Ex. 14 ¶¶ 19–29. In *Soriano*, the underlying action was in the "build up to the
preliminary hearing" when petitioner filed its Section 1782 application. *Id*. ¶ 4. The U.K. Action
was in the same procedural posture when Telegraph commenced this Section 1782 action. *See*
Pet. Mem. at 8–9. There appears to be no law or policy of the U.K. that forbids Section 1782
discovery in a libel action prior to the preliminary hearing.

Furthermore, it is well-established that a petitioner need not wait until the discovery
stage of the foreign proceeding before seeking Section 1782 assistance. *See In re
Metallgesellschaft*, 121 F.3d at 79 (a Section 1782 request may not be rejected merely because "a
foreign tribunal has not yet had the opportunity to consider the discovery request"); *In re
Gorsoan Ltd.*, No. 13-MC-397 (PGG), 2014 WL 7232262, at *9 (S.D.N.Y. Dec. 10, 2014), *aff'd
sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016) (whether the foreign tribunal
has ordered discovery on particular issues – or whether such discovery typically takes place at a
later stage in the foreign proceedings – is "irrelevant" to whether discovery is proper pursuant to
Section 1782); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 273 (S.D.N.Y.

2004) (holding that applicant need not wait until "evidentiary stage" of foreign proceeding to seek discovery pursuant to Section 1782). As with the first *Intel* factor, there is no "exhaustion" requirement under the third *Intel* factor. *See Matter of Upper Brook Companies*, No. 22-MC-97 (PKC), 2022 WL 18046694, at *8 (S.D.N.Y. Dec. 29, 2022); *In re BNP Paribas Jersey Tr. Corp.*, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018); *In re Evenstar Master Fund SPC*, No. 20-MC-418 (CS) (JCM), 2021 WL 3829991, at *12 (S.D.N.Y. Aug. 27, 2021).

### ii.  U.S. Discovery Restrictions

Chishti argues that the subpoena seeks to circumvent "strong U.S. policy in favor of respecting judicially-enforceable protective orders and in favor of alternate dispute resolution." ECF No. 13-2 at 15. In short, he argues that the Arbitration Protective Order forbids the discovery that Telegraph seeks. *Id*. The Court understands that the enforceability of the Arbitration Protective Order is being litigated in the D.C. Action. ECF No. 25 at 4–5; ECF No. 40 at 5. The Court need not reach this issue because the terms of the Arbitration Protective Order do not preclude Zweig from producing documents in response to the Section 1782 subpoena. The Arbitration Protective Order provides that "[n]othing in this Protective Order will prevent any Party from producing any Confidential Material in its possession in response to a lawful subpoena or other compulsory process . . . ." Arbitration Protective Order ¶ 8. A court-authorized Section 1782 subpoena plainly falls within this provision.[4]

Chishti submits that *Kiobel* controls. ECF No. 13-2 at 17. The circumstances in *Kiobel* differ significantly from the facts here. In that case, Kiobel was suing Shell in the Netherlands.

---

[4]     The Court need not consider Chishti's argument that the Arbitration Protective Order forbids disclosure of the Arbitration Award. *See* ECF No. 13-2 at 7. The Arbitration Award, already a matter of public record, is not within the categories of information sought by Telegraph. *See* Bolger Decl. Ex. 1; ECF No. 23 at 4.

Kiobel sought Section 1782 assistance to obtain documents from Cravath, Shell's counsel in Kiobel's earlier U.S. litigation against Shell. Cravath had previously produced those documents to Kiobel pursuant to a protective order that restricted their use to Kiobel's U.S. litigation against Shell. Kiobel was a signatory to the stipulated protective order. As discussed under the first *Intel* factor, *see supra* III(B)(1), the sole reason that Cravath had custody of Shell's documents was due to its prior representation of Shell in connection with Kiobel's U.S. litigation against Shell. The documents at issue were undiscoverable from Shell in the Netherlands due to more restrictive Dutch discovery practices. The Second Circuit held that the District Court's grant of Section 1782 assistance deprived Shell of its right to enforce the protective order it had obtained in its earlier, U.S. litigation against Kiobel. *Kiobel*, 895 F.3d at 241–42, 246.

Here, Telegraph is not in the position of a signatory to a protective order violating restrictions to which it previously bound itself. Telegraph was neither a party to the Arbitration nor a signatory to the Arbitration Protective Order. Telegraph is not a losing party in U.S. litigation seeking another bite at the apple abroad. Instead, Chishti is the losing party to a U.S. arbitration who brought his own foreign proceedings against a third party and is seeking to use the Arbitration Protective Order to prevent that third party from accessing documents relevant to its defense. That Zweig, another signatory, is the target of the subpoena does not analogize this case to *Kiobel*. Moreover, permitting discovery here, unlike *Kiobel*, would not require effectively amending or violating the Arbitration Protective Order. The Arbitration Protective Order permits, rather than forbids, the discovery here and does not restrict its use by third parties in possession of a lawful subpoena. Unlike *Kiobel*, Chishti submits no evidence that the documents at issue would be undiscoverable in the U.K. And, the instant case does not implicate *Kiobel*'s concerns with jeopardizing open attorney-client communications where counsel is forced to turn over

21

documents, in its possession solely due to U.S. litigation, to an adversary from that litigation seeking to use them offensively against the client abroad. *See Kiobel*, 895 F.3d at 241. Thus, the concerns in *Kiobel* – "the respect owed to confidentiality orders, and the concerns for lawyer-client relations" – do not militate against the subpoena here. *Id*. at 248.

### iii.   Good Faith

"In connection with the third *Intel* factor, courts consider whether the application is brought in good faith." *In re YS GM Marfin II LLC*, No. 20-MC-182 (PGG), 2022 WL 624291, at *9 (S.D.N.Y. Mar. 2, 2022) (internal citation omitted). Parties concerned with abuse of Section 1782 "can and should bring evidence of such chicanery to the Section 1782 court's attention." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (internal citation omitted). Chishti repeatedly levies allegations of bad faith conduct but fails to supply sufficient "evidence of such chicanery." *See id*. Chishti characterizes Telegraph's application as a ruse for Zweig to "sanitize" his past violations of the Arbitration Protective Order and to "launder" information into the public to aid in his defense in the D.C. Action. ECF 13-2 at 2–3, 8; ECF 37 at 4. Chishti cites Zweig's opposition to the motion to quash and Telegraph's "premature" application as indicia that they are likely collaborating to subvert the Arbitration Protective Order. ECF No. 37 at 3–5; ECF No. 40 at 5.

In lieu of nefarious purpose, Telegraph says it seeks discovery from Zweig because it has been unsuccessful in obtaining the materials it seeks from Chishti. ECF No. 23 at 1. On the record before the Court, Chishti has not demonstrated that Telegraph brought this action in bad faith. Telegraph may properly use Section 1782 discovery to aid its defense in the U.K. Action. Telegraph's objections to the terms of Chishti's proposed protective order, *see infra* section

III(B)(4), do no not demonstrate that it is acting in bad faith. *See Marfin II,* 2022 WL 624291, at *10.

That the English Court may permit public filing of documents obtained pursuant to this application, and that Zweig may thereafter be able to use such material in the D.C. Action, does not demonstrate bad faith by Telegraph. In this action, Zweig does not seek leave to use the target information, which is already within his possession, for any purpose. That the recipient of a Section 1782 subpoena opposes a motion to quash does not establish bad faith conduct by petitioner. Courts have found that ancillary benefits that may accrue to a Section 1782 petitioner do not weigh against a meritorious application. *See In re Al-Attabi*, No. 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022) ("[P]rovided the statutory and discretionary criteria are satisfied, . . . a Section 1782 application should not be denied merely because the discovery material may have potential other uses by the petitioner." (internal citation omitted)); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (finding that "the fact that [the applicant] may also be able to use the discovery in future litigation against the respondents is immaterial" to decision to grant application). In similar fashion, the Court finds that ancillary benefits that may accrue to a Section 1782 respondent do not weigh against a meritorious application. The Court considers this Section 1782 application on its own merits. The Court also enters a protective order in consideration of any risk that the evidence may be used for improper purposes. *See infra* section III(B)(4). The possibility that Zweig may nonetheless benefit down the line does not weigh against Telegraph. The third *Intel* factor weighs in favor of Telegraph.

### 4.  Burden (*Intel* Factor 4)

The fourth *Intel* Factor permits the Court to decline to compel, or limit the scope of, discovery when faced with "unduly intrusive or burdensome requests." *Intel*, 542 U.S. at 265. The subpoena cannot be burdensome to Chishti, who is "not being asked to produce anything." *In re Credito*, No. 22-MC-273 (JGK) (BCM), 2023 WL 5016497, at *9 (S.D.N.Y. May 24, 2023). However, as the party against whom the requested information will be used, Chishti has standing to object to the subpoena as overbroad. *See Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20-MC-188 (PAE), 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020). While Chishti conclusorily deems Telegraph's subpoena a "fishing expedition," his arguments purporting to address the fourth *Intel* factor simply repeat his refrain that the application is an end-run around the Arbitration Protective Order. ECF No. 13-2 at 17; ECF No. 37 at 4, 7–8. Nonetheless, to resolve any concerns about overbreadth, the Court finds it appropriate to tailor the subpoena, as Telegraph suggests, to: (1) the transcripts of the Arbitration hearing, including the exhibits introduced at the hearing; (2) the deposition transcripts for Chishti and Spottiswoode, including any exhibits introduced during the depositions; and (3) the pre-hearing and post-hearing briefing submitted by the parties to the Arbitration, including any attached declarations. *See* ECF No. 23 at 4.

"If there is an identifiable and avoidable risk that evidence sought in a section 1782 application may be used for improper purposes, a district court may enter a protective order to limit its use." *In re Arida, LLC*, No. 19-MC-522 (PKC), 2020 WL 7496355, at *7 (S.D.N.Y. Dec. 21, 2020). The Court finds it appropriate to enter a protective order to address any such risk that may exist here. The Court finds that the foregoing measures resolve any concerns of overbreadth. Accordingly, the fourth *Intel* factor weighs in favor of Telegraph. Because the three statutory

factors are met and the four *Intel* factors weigh in favor of Petitioner, the court denies the motion to quash.

**CONCLUSION**

For the reasons set forth above, the motion to intervene is GRANTED and the motion to seal and motion to quash are DENIED. Chishti's moving papers shall appear publicly on the docket in fully unredacted form. The scope of permitted discovery is hereby MODIFIED to include only (1) the transcripts of the Arbitration hearing, including the exhibits introduced at the hearing; (2) the deposition transcripts for Chishti and Spottiswoode, including any exhibits introduced during the depositions; and (3) the pre-hearing and post-hearing briefing submitted by the parties to the Arbitration, including any attached declarations. The attached protective order is hereby ENTERED.

The Clerk of Court is directed to unseal ECF Nos. 14–20, 25–26, 28–30 and 32–40 and to terminate ECF Nos. 13, 18, 24, 27 and 31.

Dated: September 6, 2023
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge